UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No. 14-13179

| |
|---|
| JOHN PATRICK DEVINE,<br>    Plaintiff<br><br>v.<br><br>WOBURN POLICE DEPARTMENT,<br>OFFICER MARIO PASCUCCIO, OFFICER<br>DAVID SIMONDS, OFFICER JEROME<br>GATELY and **JOHN DOE(S) 1-100,**<br>    Defendants, Third Party Plaintiffs<br><br>v.<br><br>JOHN JOSEPH DEVINE, SR.<br>    Third Party Defendant |

**DEFENDANTS WOBURN POLICE DEPARTMENT, MARIO PASCUCCIO,
DAVID SIMONDS, JEROME GATELY and JOHN DOE(S)',
MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

The *pro se* plaintiff, John Patrick Devine, brings this action against the defendants, Woburn Police Department and Officers Mario Pascuccio, David Simonds and Jerome Gately. The defendants brought a third party complaint against John Joseph Devine.

The defendants request that this Court dismiss all Counts and claims brought by the plaintiff.

## II. STATEMENT OF THE CASE

In his Complaint, the *pro se* plaintiff alleges his civil rights were violated pursuant to 42 U.S.C. §§ 1983 and 1985 as he alleges that he was illegally arrested with false charges being brought against him. Further, the plaintiff alleges that Officer Gately assaulted him twice with pepper spray and an unidentified officer punched him across the face.

## III. STATEMENT OF THE FACTS

**Please see the Defendants' L.R. 56.1 Statement of Undisputed Facts**

## IV. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotation omitted). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, … would permit a rational fact finder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (internal citations omitted).

To prevail on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). In order to defeat the entry of summary

judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994) (internal citations and quotations omitted).

### B. The Plaintiff's Civil Rights Were Not Violated

Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061-1062 (1st Cir. 1997), and cases cited. In the instant case, there is no question that the defendants were acting in their official capacities, i.e., were acting under color of state law at all relevant times. The challenged conduct, however, did not deny the plaintiff's rights secured by law.

#### 1. Defendants Had Probable Cause to Arrest and Charge the Plaintiff

The plaintiff claims that his arrest was unlawful. The defendants did not violate his constitutional rights. The Fourth Amendment requires arrests be based on probable cause. See Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 349 (1st Cir.

1995). If probable cause exists to arrest, then there has not been a constitutional deprivation. See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996). The probable cause standard is a "relatively low threshold" for police officers to establish. White v. Town of Marblehead, 989 F. Supp. 345, 349 (D. Mass. 1997). The probable cause analysis involves "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not [an assessment of] the officer's state of mind at the time the challenged action was taken." Alexis v. McDonald's, 67 F.3d at 349 (internal citations and quotations omitted) (alteration in original). "Probable cause will be found if 'the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" Id. (quoting Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992)) (alteration in original). This assessment depends on "the totality of the circumstances" and "probable cause conclusions may be predicated on information furnished by a credible victim[.]" White v. Town of Marblehead, 989 F. Supp. at 351, and cases cited. "If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate." Id. at 349.

The probable cause standard also applies when police are seeking or swearing out a criminal complaint. Thus, if they had probable cause to seek the complaint at the time, such officers are insulated from liability. See, e.g., Carey v. City of Fall River, 870 F.2d 40, 40 (1st Cir. 1989) (concluding probable cause protected officers who "sought out the criminal complaint"); Franco-de Jerez v. Burgos, 876 F.2d 1038, 1040-1041 (1st Cir. 1989) (finding existence of probable cause precluded immigration inspector's liability for

seeking [376] criminal complaint); White v. Town of Marblehead, 989 F. Supp. at 349, 351 (determining victim's statements alone established probable cause for officers to seek criminal complaint).

In the instant case, the uncontroverted evidence establishes that the defendants had probable cause to arrest the plaintiff and to swear out a criminal complaint against him.

### a. Assault and Battery on an Elderly Person

Based on the undisputed facts, the officers had probable cause to arrest the plaintiff for assault and battery on an elderly person. The third-party defendant, who at the time was over the age of 60, entered the Woburn Police Station on June 17, 2012 and informed Lt. Donovan that he was involved in an incident with the plaintiff at 605 Main Street. Specifically, he stated that his son threatened to kill him and struck him on the arm. Lt. Donovan, having known the third-party defendant prior to this, assessed his credibility and demeanor and determined, based on his training and experience, that pursuant to 209A, § 6, the preferred response would be to arrest the plaintiff.

As a result, Lt. Donovan dispatched the three defendants, Officers Mario Pascuccio, David Simonds and Jerome Gately to 605 Main Street. They first met at the Woburn's Boys Club and then went to the residence with the understanding that they were to enter into the rear back door of the home and arrest the plaintiff.

Pursuant to G.L. c. 209A, §6, whenever a law officer has reason to believe that a family or household member has been abused or is in danger of being abused, such officer shall use reasonable means to prevent further abuse. The officer shall take, but not limited to the following action . . . (7) arrest any person a law officer witnesses or has

probable cause to believe has violated a temporary or permanent vacate no contact order or judgment issued pursuant to § 18. . . when there is no vacate, restraining or no contact order or judgments in effect arrest shall be the preferred response whenever an officer witnesses or has probable cause to believe that a person has (a) has committed a felony; (b) has committed a misdemeanor involving abuse as defined in § 1 of this Chapter . . The safety of the victim and involved children shall be paramount to any decision to arrest. G.L. c. 209A, §6.

Abuse is defined in 209A, § 1 as "the occurrence of one or more of the following acts between family or household members: (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threats and duress." (Id.)

Based on the undisputed facts, the defendants had ample evidence to establish probable cause to find that the plaintiff committed a felony when he threatened his elderly father and struck him, placing him in imminent fear in violation of G.L. 265, Section 13K, assault and battery on an elderly person.[1]

Accordingly, the officers had probable cause to place the plaintiff under arrest and charge him with domestic assault and battery on an elderly person.

### b. Resisting Arrest

Defendants also had probable cause to arrest and charge the plaintiff for resisting

---

[1] Pursuant to § 209A, "no law officer shall be liable in any civil action regarding personal injury . . . brought by any party to a domestic violence incident for an arrest based on probable cause when such officer acted reasonably and in good faith and in compliance with this Chapter and the state wide policy as established by the Secretary of Public Safety." G.L. c. 209A

arrest. Under Mass. Gen. Laws ch. 268, § 32B, a person commits the offense of resisting arrest "if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest . . . by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another".

Here the record establishes that that the plaintiff, by his own admission, attempted to prevent the police from effecting his arrest. The plaintiff admits that the officers asked him four times to exit the residence but he refused to do so and demanded that they provide a warrant before he would comply. In addition, by closing the door on the police officers, he caused injury to Officer Pascuccio when he attempted to prevent the door from being closed. Such use of physical force, coupled with him retreating into the house and ignoring the police officers commands, created a risk of bodily harm to the officers. As a result, the officers had probable cause to arrest him and charge him with resisting arrest.

### c. Assault and Battery on a Police Officer

In addition, the officers had probable cause to arrest plaintiff for assault and battery on a police officer. Pursuant to Mass. Gen. Laws ch. 265, § 13D, a person commits the offense of assault and battery on a police officer if he engages in "purposeful and unwelcomed contact with a person the defendant knows to be a law enforcement officer actually engaged in the performance of official duties." United States v. Santos, 363 F.3d 19, 23 (1st Cir 2004) (quoting United States v. Fernandez, 121 F.3d 777, 778 (1st Cir. 1997)). Neither violence nor the use of force is an essential element of the

7

offense. Id.

Here, the officers while in the performance of their duties of placing the plaintiff under arrest were caused to experience an unwelcomed contact. Specifically, Officers Gately and Simmonds were struck by the plaintiff. As a result the officers had probable cause to arrest and charge the plaintiff with assault and battery on a police officer.

### d. Assault and Battery with a Dangerous Weapon

The offense of assault and battery by means of a dangerous weapon under G. L. c. 265, § 15A, requires that the elements of assault be present, that there be a touching, however slight, that the touching be by means of the weapon, and that the battery be accomplished by use of an inherently dangerous weapon, or by use of some other object as a weapon, with the intent to use that object in a dangerous or potentially dangerous fashion.

Here, the unrebutted evidence demonstrates that the plaintiff at the time of the incident used the door as a weapon and the defendant Pascuccio was assaulted by the glass panel which caused him injury. Accordingly, the officers had probable cause to arrest the plaintiff with assault and battery with a dangerous weapon and charge him accordingly.

### 2. The Defendants Did Not Use Excessive Force

Where an excessive force claim arises in the context of an arrest, the claim "must be analyzed in light of the Fourth Amendment's prohibition of unreasonable [138] searches and seizures." Gaudreault v. Municipality of Salem, 923 F.2d 203, 205 (1st Cir. 1990). In Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), the Supreme Court established a balancing test for determining the constitutionality of a

particular use of force. Specifically, the Court stated that [d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake. Graham, 490 U.S. at 396 (quotation and internal citation omitted). The test for reasonableness requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Id. Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. The court must keep in mind that not every push or shove rises to the level of a constitutional violation, and that police officers making arrests are often forced to make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous and rapidly-changing circumstances." Gaudreault, 923 F.2d at 205; see Graham, 490 U.S. at 396-97.

To show that the police used excessive force in violation of the Fourth Amendment, the Plaintiff "must demonstrate that the police defendant[s'] actions were not objectively reasonable, viewed in light of the facts and circumstances confronting them without regard to their underlying intent or motivation." Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002). "The relevant circumstances include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham, 490 U.S. at 396). The objective reasonableness of the force used is

also to be considered in light of the officers' obligation to "to make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous and rapidly-changing circumstances." Gaudreault v. Salem, 923 F.2d 203, 205 (1st Cir. 1990).

On June 17, 2012, the officers were presented with an extremely volatile and dangerous situation. The officers had probable cause to believe that the plaintiff committed the felony of assault and battery on an elderly person and threatened to kill his father. In addition, they knew he posed an immediate threat to the safety of the officer or others because the victim warned Lt. Donovan of his concerns. Also, when the officers arrived, the plaintiff would not let him in the house, was swearing at them, speaking over them and twice shut the door on them. Once the officers entered into the house, the plaintiff began to retreat, leaving the officers even more vulnerable as they did not know if he was seeking a weapon or creating a more dangerous situation.

The plaintiff in his complaints alleges that he was subjected to excessive force when Officer Gately sprayed him twice with pepper spray and when another officer struck him in the face.

Under the circumstances, a reasonable police officer could consider the plaintiff to be dangerous, justifying the use of pepper spray, even if it was not, in fact, necessary. Saucier v. Katz, 533 U.S. 194, 205, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001). If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."; see also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003)

(discussing police use of pepper spray). Therefore, the plaintiff has not shown a trial worthy issue as to whether using pepper spray was an unreasonable use of force.

Further, after the plaintiff was pepper sprayed, the officers approached him to place him in custody. A brief struggle ensued and the plaintiff suffered a minor cut on his hand and above his eye. The plaintiff did not see how the injury occurred and cannot identify which officer inflicted these injuries.

The reasonableness of the arresting force in the present case was further confirmed by compelling evidence that the plaintiff's alleged injuries were so minor that while he was in custody, a bandage was placed on the cuts and no additional medical treatment was required. These minor physical injuries simply are insufficient to support an inference that the officers used inordinate force to effect the intended arrest in the "tense, uncertain, and rapidly evolving circumstances," Graham, 109 S. Ct. at 1872, surrounding the reasonably perceived need to subdue a felon who was believed to be volatile and violent and who just threatened to kill his elderly father.

Summary judgment on the excessive force claims is proper under these circumstances, viewed in the light most favorable to plaintiff, as no trial worthy issue was raised concerning the objective reasonableness of the force used to effect the intended arrest.

### D. The Officers Must be Qualifiedly Immune from Liability

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800,

818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. ___, ___, 132 S. Ct. 2088, 182 L. Ed. 2d 985, 989 (2012) ."We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

**Arrest:**

The evidence is overwhelming that the officers had probable to arrest and charge the plaintiff as they did. Based on the information that the defendants had been provided with, coupled with the strict reading of G.L. 209A, the officers were required to arrest the plaintiff and they acted objectively reasonable.

**Excessive Force:**

Even if the use of pepper spray had been unconstitutionally excessive, Officer Gately would nevertheless be entitled to qualified immunity, on this record, because reasonable mistakes can be made as to the legal constraints on the police conduct involved. Saucier, 533 U.S. at 205. The Plaintiff does not suggest that the law applicable to excessive force in the contexts they claim was clearly established. Cf. McCormick, 333 F.3d at 1245 (pepper spray); Jones v. Buchanan, 325 F.3d 520, 534 (4th Cir. 2003) (pepper spray and other conduct); Jones by Jones v. Webb, 45 F.3d 178, 184 (7th Cir. 1995) (knee in back restraint); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994)

12

(pepper spray); Johnson v. Wolgemuth, 257 F. Supp. 2d 1013, 1032 (S.D. Ohio 2003) (pepper spray); Lawyer v. City of Council Bluffs, 240 F. Supp. 2d 941, 954 (S.D. Iowa 2002) (pepper spray); Bell v. Dawson, 144 F. Supp. 2d 454, 462 (W.D.N.C. 2001) [29] (knee in back and other restraint; Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1331 (M.D. Fla. 1999) (knee in back restraint); Price v. County of San Diego, 990 F. Supp. 1230, 1249 (S.D. Cal. 1998) (knee in back restraint). It appears that the law is not clearly established, as demonstrated by the cases cited above, with respect to the constitutionally permissible use of force in circumstances similar to those presented here.

Further, similar to the Courts recent ruling in Mullenix, it is not clear whether the use of pepper spray is considered excessive force. Given Plaintiff's conduct that evening and what Officer Gately learned prior to entering the home, a reasonable police officer and not the "plainly incompetent" would have perceived a sufficient threat and acted as Officer Gately did. Malley, 475 U. S., at 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271, Mullenix v. Luna 136 S. Ct. 3015 (2015). Therefore, qualified immunity would also support summary judgment in favor of Officer Gatley, even if a constitutional violation had occurred.

With regard to the claim that he sustained a minor injury above his eye and on his hand, first, the plaintiff did not see the person that struck him and cannot identify him. Second, taking him into custody was a challenge for the officers and a struggled ensued. An officer acting reasonable under those circumstances may cause minor injuries to the arrestee. Accordingly, the officers must be immune from liability.

E.  **The City of Woburn Did Not Have an Unconstitutional Custom Practice or Policy**

The Plaintiff appears to bring a claim against the City of Woburn alleging that it

13

violated his constitutional rights. Assuming he is alleging this violation was the result of the hiring, supervision, and training of the police force, his claims fail.

The City can be liable under § 1983 "only if (1) a constitutional harm occurred, and (2) the harm was caused by the execution of a government's policy or custom." Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003) (internal quotation marks omitted). Implementation or enforcement of the municipal policy or custom must be "the moving force of a violation of federally protected rights." Burrell v. Hampshire County, 307 F.3d 1, 10 (1st Cir. 2002). A custom or policy may be established by the decision of a municipal policymaker who possesses authority to establish such policy. Kelley v. Laforce, 288 F.3d 1, 9 (1st Cir. 2002).

The Plaintiff cannot show that any of his claimed constitutional violations occurred due to a custom or policy adopted by the City of Woburn. As such, the Plaintiff has failed to proffer any evidence to support municipal liability and said claim must be dismissed. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

## V. CONCLUSION

For the above stated reasons, the defendants request that this Court dismiss all counts and claims against them and enter judgment in their favor.

DEFENDANTS,
                                            WOBURN POLICE DEPARTMENT,
                                            MARIO PASCUCCIO, DAVID SIMONDS,
                                            JEROME GATELY and JOHN DOE(S),
                                            By their attorneys:

                                            /s/*Regina M. Ryan*

                                            _____
                                            Douglas I. Louison (BBO #545191)
                                            Email: Dlouison@lccplaw.com
                                            Regina M. Ryan (BBO #565246)
                                            Email: Rryan@lccplaw.com
                                            Louison, Costello, Condon & Pfaff, LLP
                                            101 Summer Street
                                            Boston, MA  02110
                                            617-439-0305
                                            FAX: 617-439-0325

Date:  January 29, 2016


## CERTIFICATE OF SERVICE

I, Regina M. Ryan, hereby certify that on the below date, I served the foregoing document by causing a copy to be mailed, postage prepaid, directed to:

John Patrick Devine, *pro se*
4 Warren Avenue, Apt. C
Woburn, MA  01801

Thomas Lawton, Esq.
Lawton & Lawton
4 Bennett Street
Woburn, MA 01801

/s/*Regina M. Ryan*

Date:  January 29, 2016

  Regina M. Ryan

14 MIIA 056