UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN PATRICK DEVINE,
    Plaintiff,

       v.                        CIVIL ACTION NO.
                                 14-13179-MBB

WOBURN POLICE DEPARTMENT,
OFFICER MARIO PASCUCCIO,
OFFICER DAVID SIMONDS,
OFFICER JEROME GATELY and
JOHN DOE(S) 1-100,
    Defendants and Third-Party
    Plaintiffs,

       v.

JOHN JOSEPH DEVINE, SR.,
    Third-Party Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 44);**
**THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 48); PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 52)**

**September 30, 2016**

**BOWLER, U.S.M.J.**

Pending before this court are three motions for summary judgment by the parties:  defendants Woburn Police Department ("Woburn Police Department"), Officer Mario Pascuccio ("Officer Pascuccio"), Officer David Simonds ("Officer Simonds") and Officer Jerome Gately ("Officer Gately") (Docket Entry # 44); plaintiff John Patrick Devine ("plaintiff") (Docket Entry # 52);

and third-party defendant John Joseph Devine, Sr. ("John Devine, Sr.") (Docket Entry # 48).  After conducting a hearing, this court took the motions (Docket Entry ## 44, 48, 52) under advisement.

PROCEDURAL HISTORY

The complaint sets out civil rights violations based on a false, "illegal [a]rrest" and the use of excessive force in violation of 42 U.S.C. § 1983 ("section 1983") and a conspiracy in violation of 42 U.S.C. § 1985 ("section 1985").  (Docket Entry # 1-1, pp. 2-3).  As construed by this court on July 14, 2015, the pro se complaint additionally sets out "violations of state law in the civil action cover sheet."  The cover sheet, in turn, refers to "excessive force," "Police Brutality," "violation[s] of Federal and State Constitutional Rights, Subject of Police assault, illegal arrest, false charges, [i]ntentional misrepresentation fraud."  (Docket Entry # 1-1, p. 1).

The parties disagree whether the complaint includes state law claims and, if so, the causes of action alleged under state law.  In his summary judgment motion, plaintiff submits that the complaint includes the following claims upon which he seeks summary judgment:  "Count I-breaking and entering, Count II-assault, Count III-battery, Count IV-illegal arrest, Count V-false accusations, Count VI-confabulation of a false police

2

report, Count VII-false imprisonment, Count VIII-violations of Plaintiff's innate civil rights protected by the Constitution of the United States . . . under U.S.C. 42 § 1983 [sic] and U.S.C. § 1985." (Docket Entry # 52). Neither the cover sheet nor the body of the complaint refer to state law claims for "breaking and entering," "battery," a common law claim of "illegal arrest," or state law claims of "false accusations," "confabulation of a false police report" and "false imprisonment."

The Woburn Police Department and Officers Pascuccio, Simonds and Gately ("defendants") acknowledge that the complaint sets out federal violations of sections 1983 and 1985 for an illegal arrest based on false charges and the use of excessive force. (Docket Entry # 55). They object, however, to the inclusion of the aforementioned state law claims "for 'assault, battery, illegal arrest, false accusation, confabulation of false police reports and false imprisonment'" because plaintiff never asserted these claims in the complaint and therefore ask this court to "deny [plaintiff's] request for summary judgment on the[se] state tort claims." (Docket Entry # 55).

The "general rules of contract construction," which afford words their ordinary meaning, apply to the construction of a complaint. Narragansett Jewelry Co., Inc. v. St. Paul Fire and Marine Ins. Co., 555 F.3d 38, 41 (1st Cir. 2009) (applying

3

"general rules of contract construction and giv[ing] words their 'plain, ordinary meaning'" in examining complaint to determine if it imposed a duty to defend an insurance company); accord Cortés-Rivera v. Dep't of Corrs. and Rehab. of Commonwealth of Puerto Rico, 626 F.3d 21, 28 (1st Cir. 2010).  The structure of the complaint also bears upon the interpretation of whether it raises a claim.  See id. (examining "plain language" of complaint and its structure to determine if it raised a claim).

Placed in proper context, deciphering the state law claims in the cover sheet therefore takes into account the fact that the body of the complaint only articulates federal section 1983 claims for a false arrest and use of excessive force and a section 1985 conspiracy.  Defendants had notice of these federal constitutional violations and undertook discovery of those claims.[1]  Liberally construing the language in the complaint and the cover sheet in light of plaintiff's pro se status, the complaint includes a cause of action for the violation of plaintiff's "State constitutional rights" under the Massachusetts constitution based on an "illegal arrest" and the use of "excessive force"[2] via the "assaults" committed by the police officers.  (Docket Entry # 1-1, p. 1).  Thus, consistent

_____

[1]  As of July 2015, defendants also had notice that the complaint included "violations of state law in the civil action cover sheet."  (Docket Entry dated July 14, 2005).

[2]  This court does not interpret the complaint as setting out a common law claim for "illegal arrest" or "false charges."

4

with the section 1983 federal claims in the body of the
complaint and in light of the reference to "State constitutional
rights" in the cover sheet, the state law claims in the
complaint consist of a violation of the Massachusetts state
constitution[3] based on an illegal arrest and excessive force.
Defendants' request that this court deny plaintiff summary
judgment on the state tort claims because they are not in the
complaint is therefore well taken with respect to the state law
"claims" in the cover sheet, except for the claim of the
violation of plaintiff's "State constitutional rights" based on
an illegal arrest and use of excessive force.  Plaintiff's
summary judgment motion therefore pertains only to the *existing*
causes of action upon which he seeks summary judgment, namely,
the section 1983 and section 1985 claims.  Plaintiff's motion
insofar as it seeks summary judgment on the state law "claims"
referenced in his summary judgment motion[4] is denied because he
does not assert them in the complaint.

Turning to the third-party complaint, as explained in the
July 14, 2015 Order, it sets out claims for contribution and
indemnity based on the state law claims pursuant to
Massachusetts General Laws chapter 231B.  (Docket Entry ## 22-1,

---

[3]  This court expresses no opinion on the viability of a claim
under the state constitution.

[4]  Plaintiff's summary judgment motion does not reference or seek
summary judgment on the violation of his state constitutional
rights under the Massachusetts constitution.

27).  The Order explicitly denied without prejudice leave to
file the third-party complaint with respect to contribution and
indemnity claims on the federal claims brought by plaintiff,
including the section 1985 conspiracy claim, absent further
briefing.[5]  See generally Nga Truong v. Pageau, 2013 WL 6122097,
at *5 ("a claim for contribution may not be asserted in a
[section] 1983 action"); Castro v. County of Nassau, 739
F.Supp.2d 153, 184 (E.D.N.Y. 2010) ("[n]o right to contribution
exists under § 1983" and also stating, "[n]or is there a federal
right of indemnification under the statute").  There has been no
further briefing.  Accordingly, at this point, there is no
contribution or indemnity claim in the third-party complaint in
the event defendants are found liable on the section 1983 and
1985 claims.

---

[5]  The ruling reads as follows:

> [T]he motion is allowed to the extent that defendants may
> seek contribution and indemnity from John Joseph Devine,
> Sr. as a joint tortfeasor under Mass. Gen. L. ch. 231B for
> any liability for damages defendants incur under the state
> law claims.  See Lehman v. Revolution Portfolio L.L.C., 166
> F.3d 389, 393-394 (1st Cir. 1999).  The motion is denied
> without prejudice as to the federal claims for violations
> of 42 U.S.C. §§ 1983 and 1985.  Defendants may renew the
> motion as to the federal claims with additional briefing
> that a right of contribution or indemnity is recognized
> under 42 U.S.C. § 1983, 1985 or federal common law.  See
> Ricci v. Key Bancshares of Maine, Inc., 768 F.2d 456, 465
> n.5 (1st Cir. 1985) (right to contribution for liability
> arising from a violation of a federal statute is a matter
> of federal law); see also Nga Truong v. Pageau, 2013 WL
> 6122097, at *5-6 (D.Mass. Nov. 19, 2013) . . . .

Notwithstanding this limitation regarding the claims in the third-party complaint, the motion for summary judgment filed by John Devine, Sr. seeks summary judgment on the basis of his potential liability for contribution and indemnity for the "action against [him] alleging a civil conspiracy." (Docket Entry # 49, p. 1).  John Devine, Sr. further notes that, "The [T]hird Party Plaintiff's sole count against [him] is conspiracy." (Docket Entry # 49).  John Devine, Sr.'s summary judgment motion is therefore denied as moot given the absence of:  a state law claim for civil conspiracy against him in the third-party complaint; and/or a state law claim for civil conspiracy in the complaint for which he would be subject to contribution and indemnity.  As noted above, the state law claims in the complaint are for an illegal arrest without probable cause and the use of excessive force.

Defendants, in turn, move for summary judgment on all counts and claims brought by plaintiff.  With respect to the section 1985 conspiracy claim, however, they did not provide an argument or basis to allow summary judgment on that claim.  The brevis assertion in an opposition to plaintiff's summary judgment motion that the court should dismiss the claim because plaintiff proffers no evidentiary support (Docket Entry # 55, p. 5) is not incorporated into the memorandum in support of

defendants' summary judgment motion, nor are the arguments to support it.  (Docket Entry ## 44, 45).

<u>STANDARD OF REVIEW</u>

Where, as here, the parties have filed cross motions for summary judgment, the court must "'determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'"  <u>Barnes v. Fleet Nat'l Bank, N.A.</u>, 370 F.3d 164, 170 (1st Cir. 2004).  Each summary judgment motion is reviewed separately and factual disputes are resolved in favour of the non-moving party.  <u>See</u> <u>OneBeacon American Ins. Co. v. Commercial Union Assurance Co. of Canada</u>, 684 F.3d 237, 241 (1st Cir. 2012) (viewing cross motions for summary judgment "'separately,' in the light most favourable to the non-moving party, and draw[ing] all reasonable inferences in that party's favor").

Summary judgment is designed "to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  <u>Tobin v. Fed. Express Corp.</u>, 775 F.3d 448, 450 (1st Cir. 2014) (quoting <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 794 (1st Cir. 1992)).  It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  It is inappropriate "if the record is sufficiently open-ended to

permit a rational factfinder to resolve a material factual dispute in favor of either side." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014). The evidence is viewed "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in his favor. Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014). Where the nonmovant bears the burden of proof at trial, he "'must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.'" Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014); see Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013) (as to issues on which nonmovant bears burden of proof, he must "'demonstrate that a trier of fact reasonably could find in his favor'").

In reviewing a summary judgment motion, a court may examine all of the record materials on file "including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials." Fed.R.Civ.P. 56(c)(1)(A). "Unsupported allegations and speculation,"

however, "do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment." Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011); see Serra v. Quantum Servicing, Corp., 747 F.3d 37, 39-40 (1st Cir. 2014) ("allegations of a merely speculative or conclusory nature are rightly disregarded").

Defendants submit a LR. 56.1 statement of undisputed facts in support of their summary judgment motion.  Plaintiff did not file a response to the statement with citations to the record or otherwise controvert a number of the statements by pointing to materials of suitable evidentiary quality elsewhere in the record.  Uncontroverted statements of fact in defendants' LR. 56.1 statement therefore comprise part of the summary judgment record.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert); see also Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 n.7 (1st Cir. 2003) (citing principle that "'pro se status does not insulate a party from

complying with procedural and substantive law'"). Adhering to this framework, the record sets out the following facts.

FACTUAL BACKGROUND

On June 17, 2012, plaintiff was arrested at 605 Main Street in Woburn, Massachusetts by Officers Pascuccio, Simonds and Gately, all members of the Woburn Police Department at the relevant time. (Docket Entry # 50, ¶ 1) (Docket Entry # 58, ¶ 1) (Docket Entry # 46, p. 2). On that same day, plaintiff's father, John Devine, Sr., went to the Woburn Police Department after having an argument with plaintiff. (Docket Entry # 46-11, p. 3).[6] As stated in his deposition, John Devine, Sr. confirmed he did not ask the police to arrest plaintiff. (Docket Entry # 53-1, p. 3). John Devine, Sr. also stated at his deposition that plaintiff had never hit him and, to the best of his knowledge, plaintiff had never threatened him. (Docket Entry # 53-4, p. 8).

While at the Woburn police station on June 17, 2012, John Devine, Sr. reported to the police that plaintiff had struck him earlier that day. (Docket Entry # 46-11, p. 3). John Devine, Sr. also reported to the Woburn police that he was afraid of his son, plaintiff. (Docket Entry # 46-11, p. 3). As stated in Lt. Donovan's affidavit, John Devine, Sr. told Lt. Donovan he was

---

[6] Page numbers refer to the page as docketed as opposed to the page of the exhibit or deposition transcript.

afraid of plaintiff because plaintiff had just assaulted him and also threatened to kill him.[7]  (Docket Entry # 46-2, p. 3).  John Devine, Sr. advised the police that the house at 605 Main Street was not locked and the police could enter the residence.  John Devine, Sr. was the legal owner of the home.  (Docket Entry # 46-11, pp. 2-4).

Lt. Donovan dispatched Officers Pascuccio, Simonds and Gately to 605 Main Street, where Lt. Donovan understood plaintiff was located.  (Docket Entry # 50, ¶ 3) (Docket Entry # 58, ¶ 3).  All three officers were employed by the City of Woburn and had attended the police academy prior to the incident on June 17, 2012.  (Docket Entry # 46, p. 3).  Based on his personal knowledge, Lt. Donovan knew John Devine, Sr. was over 60 years of age on June 17, 2012.  (Docket Entry # 46-11, p. 4).  In response to a set of admissions, John Devine, Sr. also confirmed he was 60 years of age or older when he went to the Woburn Police Department on June 17, 2012.  (Docket Entry # 46-11, p. 4).  Officer Pascuccio was the lead officer and was told by Lt. Donovan to place plaintiff under arrest.  (Docket Entry # 50, ¶ 3) (Docket Entry # 58, ¶ 3).  Lt. Donovan advised Officer Pascuccio that because John Devine, Sr. indicated plaintiff

---

[7]  The above statement is not considered for the truth of the matter asserted but rather it is considered for the purpose of showing the knowledge of Lt. Donovan regarding plaintiff's propensity for violence and the knowledge of Lt. Donovan.

could be violent, he dispatched two additional Woburn police officers, Officers Simonds and Gately, to assist in placing plaintiff under arrest. (Docket Entry # 46-2, p. 3).

As stated in his deposition, when Officer Gately arrived at 605 Main Street, he knew John Devine, Sr. had reported to the police that plaintiff had struck John Devine, Sr. earlier that day. (Docket Entry # 46-13, p. 4) (Docket Entry # 46-11, p. 3). Before going to the house, Officers Pascuccio, Simonds, Gately and John Devine, Sr. met at the Woburn Boy's Club to discuss their strategy for apprehending a combative subject. (Docket Entry # 46-13).

Shortly thereafter, Officers Pascuccio, Simonds and Gately arrived at 605 Main Street at the rear door. (Docket Entry # 50, ¶ 4) (Docket Entry # 58, ¶ 4). Plaintiff was in the residence and responded to Officers Pascuccio, Simonds and Gately's knock on the door of 605 Main Street. (Docket Entry Docket Entry # 50, ¶ 5) (Docket Entry # 58, ¶ 5). Plaintiff opened the door and asked Officers Pascuccio, Gately and Simonds "what was going on." (Docket Entry # 50, ¶ 5) (Docket Entry # 58, ¶ 5). Officers Pascuccio, Gately and Simonds asked plaintiff four to five times to exit the property over a time period of one and a half to two minutes. Plaintiff refused. (Docket Entry # 50, ¶ 5) (Docket Entry # 58, ¶ 5). As stated in his deposition, Officer Pascuccio recalled that plaintiff

"slammed the door," causing Officer Pascuccio's hand to go
through the door's glass window pane. (Docket Entry # 46-12,
pp. 8-11). As a result, Officer Pascuccio received a small cut
on the bottom of the palm of his hand by his "pinky" finger.
Officer Pascuccio applied a "little direct pressure to stop the
bleeding." (Docket Entry # 46-12, p. 10). Officer Pascuccio
believed he had probable cause to arrest plaintiff for assault
and battery with a dangerous weapon after his hand was cut by
the broken glass. (Docket Entry # 46, p. 3). At his
deposition, plaintiff stated he "calmly close[d] the back door
and then Officer Pascuccio reached out across his body . . . and
his hand struck that window pane and shattered it." (Docket
Entry # 46-7, p. 11). When Officer Gately asked plaintiff to
open the door again, plaintiff complied, according to his
deposition testimony. (Docket Entry # 46-7, p. 12). Plaintiff
also stated he wanted to put some distance between himself and
the officers and subsequently backed away from Officers
Pascuccio, Gately and Simonds because "they were becoming more
agitated and assaultive in their behavior." (Docket Entry # 46-
7, p. 13). Plaintiff testified he "backed as far as [he] could
retreating into the room." (Docket Entry # 46-7, p. 13).

Officers Gately, Simonds and Pascuccio entered into the house
through the open back door and plaintiff "yelled at them . . .
demanded that they get out of the house, and . . . swore at them

14

using expletives." (Docket Entry # 46-7, p. 17). While in the house, Officer Pascuccio told plaintiff to put his hands behind his back as he was being placed under arrest. (Docket Entry # 46, ¶ 14).[8] Plaintiff heard a request directed at him by one of the officers but plaintiff spoke over the officer, interrupted him and ordered him out of the house. (Docket Entry # 46, ¶ 15). As stated in his deposition, plaintiff did not believe his father, John Devine, Sr., authorized Officers Pascuccio, Gately and Simonds to enter the house and plaintiff repeatedly asked the officers if they had a warrant. (Docket Entry # 46-7, pp. 9-14). Plaintiff confirmed, however, that if John Devine, Sr. had authorized the officers to enter the house that would have been "okay." (Docket Entry # 46-7, p. 19).

As stated by plaintiff at his deposition, "while one of [his] hands was being pinned behind [his] back, [the] hand was cut on a piece of glass that was laying on the floor or somewhere in the room." (Docket Entry # 46-8, p. 4). Plaintiff also stated he was struck in the left eye by a closed fist. Plaintiff could not identify which officer struck him. (Docket Entry # 46, p. 4, ¶ 17). Plaintiff stated the entire incident lasted less than five minutes. (Docket Entry # 46, p. 4, ¶ 18). Officers

---

[8] In accordance with LR. 56.1, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."

Gately, Simonds and Pascuccio were in police uniforms at the time of the arrest and plaintiff knew they were police officers. (Docket Entry 46-7, pp. 7-8). Plaintiff was subsequently placed in custody. (Docket Entry # 50, ¶ 6) (Docket Entry # 58, ¶ 6).

In answering plaintiff's interrogatories, Officer Pascuccio and Officer Simonds stated they did not physically assault plaintiff. (Docket Entry # 46-14, pp. 3, 6). Officer Simonds testified that Officers Pascuccio and Gately deployed capsicum. (Docket Entry # 53-3, p. 4). Officer Gately was trained in the use of pepper spray and believed plaintiff needed to be neutralized. (Docket Entry # 46, p. 4). The pepper spray did not neutralize plaintiff and Officers Pascuccio, Simonds and Gately then took hold of him and placed him in handcuffs. (Docket Entry # 46, p. 4). While being placed under arrest, plaintiff struck Officer Gately and Simonds. (Docket Entry # 46, ¶ 19).

In answer to plaintiff's interrogatories, Officer Gately acknowledged he had physical contact with plaintiff while trying to restrain him by deploying capsicum, released once. (Docket Entry # 46-14, p. 9). Officer Gately confirmed he deployed capsicum as he advanced towards plaintiff stating, "'You're under arrest.'" (Docket Entry # 53-2, pp. 4-5). Officer Gately also stated he did not cause bodily harm to plaintiff, though plaintiff was agitated from the "pepper spray." (Docket Entry #

16

46-14, p. 10).  Officer Gately confirmed plaintiff ended up on
the floor during the arrest and stated he thought plaintiff
"ended up with a cut on the side of [his] head."  (Docket Entry
# 53-2, p. 6).  The cut was covered with a bandage and required
no additional medical attention.  (Docket Entry # 46, p. 4).
Although Officer Gately did not seek medical attention, he
stated he was struck, kicked or punched "multiple times" during
the incident.  (Docket Entry # 53-2, p. 6).

Plaintiff was arrested and charged with assault and battery
on a person 60 years of age or older which caused bodily injury,
assault with a dangerous weapon, two counts of assault and
battery on a police officer and resisting arrest.  (Docket Entry
# 50, ¶ 7) (Docket Entry # 58, ¶ 7) (Docket Entry # 53-8).  On
June 18, 2012, plaintiff was arraigned on the charges at Woburn
District Court.  (Docket Entry # 50, ¶ 7) (Docket Entry # 58, ¶
7) (Docket Entry # 53-8).

At the arraignment, the court ordered an evaluation of
plaintiff for competency and criminal responsibility.  (Docket
Entry # 50, ¶ 8) (Docket Entry # 58, ¶ 8).  In particular, after
a hearing with testimony from "Dr. Shapiro," the court ordered
evaluation for competency and criminal responsibility to be
conducted on an in-patient basis at Bridgewater State Hospital.
(Docket Entry # 50, ¶ 8) (Docket Entry # 58, ¶ 8).  On July 6,
2012, Woburn District Court found plaintiff not competent and

ordered him committed pursuant to section six of Massachusetts
General Laws chapter 123 ("chapter 123").  (Docket Entry # 50, ¶
9) (Docket Entry # 58, ¶ 9).

On July 19, 2012, Woburn District Court revoked the order to
commit plaintiff for further examination.  "[T]he Brockton
District Court was to conduct an additional commitment hearing."
(Docket Entry # 50, ¶ 10) (Docket Entry # 58, ¶ 10).  In October
2012, Woburn District Court ordered another examination of
plaintiff under section 19 of chapter 123.  (Docket Entry # 50,
¶ 11) (Docket Entry # 58, ¶ 11).  After a hearing, the court
ordered "plaintiff held without bail until the conditions set by
the Superior Court could be met."  (Docket Entry # 50, ¶ 11)
(Docket Entry # 58, ¶ 11) (Docket Entry # 50-5, p. 4).

Meanwhile, plaintiff's father, John Devine, Sr., informed the
Middlesex County District Attorney's office through counsel that
he did not wish to proceed with criminal charges against
plaintiff.  (Docket Entry # 50, ¶ 12) (Docket Entry # 58, ¶ 12).
Subsequently, on January 31, 2013, the count for assault and
battery on an individual 60 years or older was nolle prossed.
(Docket Entry # 50, ¶ 12) (Docket Entry # 58, ¶ 12).  Woburn
District Court ordered plaintiff re-examined for competency and
criminal responsibility pursuant to section 15(a) of
Massachusetts General Laws chapter 123 and plaintiff was held

without bail.  (Docket Entry # 50, ¶ 13) (Docket Entry # 58, ¶ 13).

On February 13, 2013, the court ordered plaintiff examined for competency pursuant to section 15(b) of chapter 123.  On March 1, 2013, Bridgewater State Hospital requested an extension of plaintiff's commitment.  (Docket Entry # 50, ¶ 14) (Docket Entry # 58, ¶ 14).  On March 9, 2013, Woburn District Court found plaintiff was not competent.  (Docket Entry # 50, ¶ 15) (Docket Entry # 58, ¶ 15).  Three months later on June 5, 2013, plaintiff was deemed competent and was to be released from the custody of Bridgewater State Hospital back into the custody of the Middlesex County Sheriff.  (Docket Entry # 50, ¶ 16) (Docket Entry # 58, ¶ 16).

On September 19, 2013, a judge found plaintiff not guilty of the two counts of assault and battery on a police officer and the one count of resisting arrest.  (Docket Entry # 50, ¶ 17) (Docket Entry # 58, ¶ 17).  On October 17, 2013, a judge found plaintiff not guilty of assault and battery with a dangerous weapon.  (Docket Entry # 50, ¶ 18) (Docket Entry # 58, ¶ 18).

Prior to the June 2012 events, a different incident occurred in 2009 between plaintiff and John Devine, Sr. in which a restraining order was issued.  (Docket Entry # 50, ¶ 20) (Docket Entry # 58, ¶ 20).  Specifically, plaintiff turned over a chair in which John Devine, Sr. was sitting.  (Docket Entry # 50, ¶

20) (Docket Entry # 58, ¶ 20).   The restraining order stated there was a substantial likelihood of immediate danger of abuse. (Docket Entry # 46-3, p. 4).   John Devine, Sr.'s affidavit from 2009 noted plaintiff told John Devine, Sr. he was going to "beat" and "kill [him]."  (Docket Entry # 46-3, p. 5).

On June 6, 2013, John Devine, Sr. sought another restraining order against plaintiff in Woburn District Court.  (Docket Entry # 50-4, p. 3).   In an affidavit dated June 6, 2013, John Devine, Sr. stated that plaintiff "ha[d] a violent way" and "[would] try to harm [him]."  (Docket Entry # 50-4, p. 6).   At a hearing in 2013 in Woburn District Court, John Devine, Sr. represented to the court he had been abused by plaintiff the year before, referring to the incident in June 2012.  (Docket Entry # 50, ¶ 21) (Docket Entry # 58, ¶ 21).   John Devine, Sr. also represented to Woburn District Court that plaintiff had abused him in 2012 and 2010.  (Docket Entry # 50, ¶ 21) (Docket Entry # 58, ¶ 21).   At the June 2013 hearing, John Devine, Sr. stated plaintiff turned over a chair while he was sitting in it and told him he deserved it.  (Docket Entry # 50, ¶ 21) (Docket Entry # 58, ¶ 21).   Also at the hearing and referring to the incident on June 17, 2012, John Devine, Sr. stated plaintiff had a hammer in his hand, stood over John Devine, Sr. and threatened him.  (Docket Entry # 50, ¶ 22) (Docket Entry # 58, ¶ 22).   In response, he went to the Woburn Police Department and sought the

assistance of the police.  (Docket Entry # 50, ¶ 22) (Docket
Entry # 58, ¶ 22).

DISCUSSION

I.  Defendants' Summary Judgment Motion

Defendants move for summary judgment on all claims including
the section 1983 and section 1985 claims.[9]  With respect to the
section 1983 claim, they submit that defendants had probable
cause to arrest plaintiff for assault and battery on an elderly
person, resisting arrest, assault and battery on a police
officer and assault and battery with a dangerous weapon.
(Docket Entry # 45).  Next, as to the excessive force section
1983 claim, defendants argue that the facts establish they did
not use excessive force.  (Docket Entry # 45).  Separately, they
maintain they are entitled to qualified immunity for the false
arrest and excessive force section 1983 claims.  (Docket Entry #
45).  Finally, they argue that the City of Woburn and,
therefore, the Woburn Police Department upon which defendants
seek summary judgment, is not liable because it did not have an
unconstitutional custom, practice or policy.  (Docket Entry #
45).

---

[9]  As previously discussed, defendants do not articulate an
argument relative to seeking summary judgment on the section
1985 conspiracy claim.

Plaintiff, in turn, seeks summary judgment on his claims arising under section 1983 and section 1985.[10]  Plaintiff did not file an opposition to defendants' motion for summary judgment.[11] (Docket Entry # 52).  Plaintiff also did not file a response with citations to the record to defendants' LR. 56.1 statement of undisputed facts.  Accordingly, the statement of facts in defendants' LR. 56.1 statement are deemed admitted for purposes of defendants' summary judgment motion.  See LR. 56.1; Cochran v. Quest Software, Inc., 328 F.3d at 12; Stonkus v. City of Brockton Sch. Dep't, 322 F.3d at 102.  As indicated in the standard of review, plaintiff's allegations or recitation of facts without citations to the record in plaintiff's summary judgment brief is not adequate to forestall summary judgment. See Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001); accord Geshke v. Crocs, Inc., 740 F.3d at 77.

A.   Section 1983 False Arrest Claim

It is well settled that in section 1983 cases:

"[w]hether [the] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it--whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information

---

[10]  As previously explained, the complaint does not include the state law "claims" upon which plaintiff also seeks summary judgment.

[11]  In light of plaintiff's pro se status, this court will consider any argument plaintiff raises in his summary judgment motion as raised in opposition to defendants' summary judgment motion.

> were sufficient to warrant a prudent man in believing that
> the [plaintiff] had committed or was committing an
> offense."

Beck v. State of Ohio, 379 U.S. 89, 91 (1964) (quoting Brinegar

v. United States, 338 U.S. 160, 175-76 (1949)).  "[P]robable

cause is a reasonable ground for belief of guilt" and "this

means less than evidence which would justify condemnation or

conviction."  United States v. Bashorun, 225 F.3d 9, 17 (1st Cir.

2000) (citations, internal quotation and parentheses omitted).

"To determine whether an officer had probable cause to arrest an

individual," the court examines "the events leading up to the

arrest, and then decide[s] 'whether these historical facts,

viewed from the standpoint of an objectively reasonable police

officer, amount to' probable cause."  Maryland v. Pringle, 540

U.S. 366, 371 (2003).  Probable cause requires a reasonable

belief as opposed to an ironclad one that the individual

committed an offense.  See Acosta v. Ames Dep't Stores, Inc.,

386 F.3d 5, 11 (1st Cir. 2004).  "The exact degree of certainty

required to establish probable cause is difficult to quantify;

it falls somewhere between '"bare suspicion" and what would be

needed to "justify conviction."'"  Burke v. Town of Walpole, 405

F.3d 66, 80 (1st Cir. 2005) (internal brackets and ellipses

omitted); Davila-Lynch v. City of Brockton, 2011 WL 4072092, at

*4 (D.Mass. Sept. 12, 2011).

Here, plaintiff was charged with assault and battery on an elderly person under section 13K(b) ("section 13K(b)") of Massachusetts General Laws chapter 265 ("chapter 265"). Massachusetts law, however, authorizes the police to use all reasonable means to prevent suspected abuse of a family member. Specifically, under section six of Massachusetts General Laws chapter 209(A) ("chapter 209(A)"), whenever any law officer has reason to believe that a family or household member has been abused or is in danger of being abused, such officer shall use all reasonable means to prevent further abuse.  The "officer shall take, but not be limited to the following action . . . (7) . . . arrest shall be the preferred response whenever an officer witnesses or has probable cause to believe that a person:  (a) has committed a felony; (b) has committed a misdemeanor involving abuse as defined in section one of this chapter; (c) has committed an assault and battery."  Mass. Gen. L. ch. 209(A), § 6.  Abuse is defined in section one of chapter 209(A) as "the occurrence of one or more of the following acts between family or household members:  (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threats and duress."  Mass. Gen. L. ch. 209(A), § 1.

Here, plaintiff's father, John Devine, Sr., went to the police station seeking assistance from the Woburn Police Department.  John Devine, Sr. explained that plaintiff had threatened to kill him and assaulted him at his home located at 605 Main Street in Woburn.  Lt. Donovan also knew that John Devine, Sr. was older than 60 years of age.  Based on John Devine, Sr.'s statements given to Lt. Donovan at the Woburn police station, Officers Pascuccio, Gately and Simonds had a reasonable ground to believe that plaintiff committed a misdemeanor involving abuse of an elder by both causing physical harm and by placing another (John Devine, Sr.) in fear of imminent serious physical harm.

Defendants also argue they had probable cause to arrest and charge plaintiff with resisting arrest.  Under section 32(B) of Massachusetts General Laws chapter 268, "A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest . . .  by:  (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."  Mass. Gen. L. ch. 268, § 32B.

Here, Officers Pascuccio, Gately and Simonds asked plaintiff four to five times to exit the property over a period

of one and a half to two minutes and plaintiff refused.  Officer
Pascuccio testified that plaintiff "slammed the door" causing
Officer Pascuccio's hand to go through the pane in the glass
window on the door.  (Docket Entry # 46-12, pp. 8-11).
Plaintiff testified he wanted to put some distance between
himself and the officers and yelled at the officers when they
entered through the back door, demanding they get out of the
house.  Officer Gately deployed capsicum as he advanced towards
plaintiff, stating "'You're under arrest.'"  (Docket Entry # 53-
2, pp. 4-5).  Officer Gately also confirmed plaintiff ended up
on the floor during the arrest and plaintiff stated he was
struck in the left eye by a closed fist.  Although Officer
Gately did not seek medical attention, he stated he was struck,
kicked or punched multiple times during the incident.

   Officers Pascuccio, Gately and Simonds were in police
uniforms at the time of the arrest.  Viewing the facts in
plaintiff's favor as the nonmoving party, plaintiff closed the
door with the glass panes on Officer Pascuccio, which created a
serious risk of causing bodily injury to Officer Pascuccio
and/or the other officers under the volatile and fast moving
events.  Both plaintiff and Officer Gately stated they were
injured during the altercation.  Viewed from the standpoint of
an objectively reasonable police officer, there was probable
cause to arrest plaintiff for resisting arrest.

Defendants also argue there was probable cause to arrest plaintiff for assault and battery on a police officer.  Pursuant to section 13(D) of chapter 265, a person commits the offense of assault and battery on a police officer if the person commits "an assault and battery upon any public employee when such person is engaged in the performance of his duties at the time of such assault and battery."  Mass. Gen. L. ch. 265, § 13D.

Here, Officers Pascuccio, Gately and Simonds were in police uniforms at the time of the arrest and plaintiff was aware they were in uniform.  Officer Gately was struck, kicked or punched multiple times during the incident on June 17, 2012.[12]  He did not seek medical attention.  Officer Gately also confirmed plaintiff ended up on the floor during the arrest and stated he thought plaintiff ended up with a cut on the side of his head. Plaintiff stated he was struck in the left eye by a closed fist. Plaintiff could not identify which officer struck him.  Officer Pascuccio recalled that plaintiff "slammed the door," causing Officer Pascuccio's hand to go through the door's pane glass window.  (Docket Entry # 46-12, pp. 8-11).  As a result, Officer Pascuccio received a small cut on the bottom of the palm of his

---

[12]  Plaintiff did not file a response with references to the affidavits, depositions or other proper documentation in response to defendants' LR. 56.1 statement regarding the above (Docket Entry # 46, ¶ 19).  Defendants' statement is supported by the citation to the deposition of Officer Gately.  (Docket Entry # 53-2, p. 6).

hand.  In light of the above facts, the officers had probable cause to arrest plaintiff for assault and battery on a police officer.

Finally, under plaintiff's section 1983 false arrest claim, defendants move for summary judgment as to plaintiff's claim of false arrest for assault and battery with a dangerous weapon. With respect to section 15(A)(b) of chapter 265, the Massachusetts Supreme Judicial Court defines the offense as requiring:

> that the elements of assault be present, that there be a touching, however slight, that that touching be by means of the weapon, and that the battery be accomplished by use of an inherently dangerous weapon, or by use of some other object as a weapon, with the intent to use that object in a dangerous or potentially dangerous fashion.

See United States v. Hart, 674 F.3d 33, 42 (1st Cir. 2012) (quoting Commonwealth v. Appleby, 402 N.E.2d 1051, 1059 (Mass. 1980) (internal citations omitted)).

Here, Officer Pascuccio stated that plaintiff "slammed the door" causing Officer Pascuccio's hand to go through a glass pane on the door.  (Docket Entry # 46-12, pp. 8-11).  Although direct pressure stopped the bleeding, Officer Pascuccio suffered a cut on the bottom palm of his hand from the broken glass. Officer Pascuccio along with Officers Gately and Simonds asked plaintiff four to five times to exit the property but plaintiff refused.  Although a door with pane glass windows is not

inherently dangerous, the officers reasonably believed plaintiff used that object in a dangerous fashion.  Taking into account the events leading up to the arrest and viewed from the standpoint of an objectively reasonable police officer, there was probable cause to arrest plaintiff for assault and battery with a dangerous weapon.  Summary judgment is therefore warranted on the section 1983 false arrest claim.

B.  Section 1983 Excessive Force Claim

"Excessive force claims are founded on the Fourth Amendment right to be free from unreasonable seizures of the person." Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010).  Such claims require the plaintiff to "'show that the defendant officer employed force that was unreasonable under the circumstances.'"  Kenney v. Floyd, 700 F.3d 604, 609 (1st Cir. 2012) (quoting Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007)).  Objective reasonableness is "the constitutional touchstone."  Raiche v. Pietroski, 623 F.3d at 36.  Viewed "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,'" Kenney v. Floyd, 700 F.3d at 609, the assessment requires "weighing three non-exclusive factors:  (1) 'the severity of the crime at issue,' (2) 'whether [the suspect] poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade

arrest by flight.'"  Raiche v. Pietroski, 623 F.3d at 36

(quoting Graham v. Connor, 490 U.S. 386, 396 (1989)); Morelli v.

Webster, 552 F.3d 12, 23 (1st Cir. 2009).  "Fourth Amendment

jurisprudence has long recognized that the right to make an

arrest or investigatory stop necessarily carries with it the

right to use some degree of physical coercion or threat thereof

to effect it."  Graham v. Connor, 490 U.S. at 396.

In the case at bar, plaintiff alleges he was subjected to

excessive force.  Defendants argue that the use of capsicum was

justified because the officers, under the circumstances, could

consider plaintiff dangerous.  Defendants additionally argue

that plaintiff's injuries are insufficient to support an

inference that the officers used excessive force.

Here, John Devine, Sr. reported to the Woburn police that

plaintiff, his son, had struck him earlier that day on June 17,

2012.  John Devine, Sr. also reported to the Woburn police that

he was afraid of his son.  Officers Pascuccio, Gately and

Simonds asked plaintiff four to five times to exit the property

and plaintiff refused.  Officer Pascuccio recalled that

plaintiff "slammed the door," causing Officer Pascuccio's hand

to go through the pane glass window.  (Docket Entry # 46-12, pp.

8-11).  As a result, Officer Pascuccio received a small cut on

his hand.  In contrast, plaintiff stated he "calmly close[d] the

back door and then Officer Pascuccio reached out across his body

. . . and his hand struck that window pane and shattered it."
(Docket Entry # 46-7, p. 11).  Plaintiff stated he backed away
from Officers Pascuccio, Gately and Simonds.

While in the house, plaintiff yelled at the officers, used
expletives and demanded they get out of the house.  Officer
Pascuccio told plaintiff he was under arrest.  Plaintiff heard a
request directed at him by one of the officers, but he spoke
over the officer, interrupted him and ordered him out of the
house.  Plaintiff did not believe Officers Pascuccio, Simonds
and Gately had authorization to enter the property and
repeatedly asked if they had a warrant.  Plaintiff testified
that his hand was cut while one of his hands was being pinned
behind his back.  He also stated he was struck in the left eye
by a closed fist, although he could not identify which officer
struck him.  Officer Simonds testified that Officers Gately and
Pascuccio deployed capsicum.  Officer Gately confirmed he
deployed capsicum as he advanced towards plaintiff stating,
"'You're under arrest.'"  (Docket Entry # 53-2, pp. 4-5).  While
being placed under arrest, plaintiff struck Officers Gately and
Simonds.  Although he did not seek medical treatment, Officer
Gately stated he was struck, kicked or punched multiple times.

In sum, the summary judgment record sets out disputed
issues of material fact regarding whether the officers' use of
force was objectively reasonable.  A finder of fact could

determine Officers Pascuccio, Gately and Simonds applied
reasonable force given plaintiff's propensity for violence and
behavior during the incident in June 2012.  A finder of fact,
however, could also find plaintiff was attempting to distance
himself from the officers in a relatively non-combative manner
and the use of pepper spray by Officer Gately, while advancing
towards plaintiff, and then by Officer Pascuccio constituted
excessive force.  Absent qualified immunity, summary judgment on
the excessive force section 1983 claim is therefore not
warranted.

C.   Qualified Immunity of Officers

     Defendants move for summary judgment arguing the officers
are entitled to qualified immunity from damages for both the
false arrest and excessive force claims.[13]  "'[Q]ualified
immunity protects government officials from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.'"  MacDonald v. Town of
Eastham, 745 F.3d 8, 11 (1st Cir. 2014) (quoting Pearson v.
Callahan, 555 U.S. 223, 231 (2009)).  The doctrine affords
"'breathing room'" to government officials "'to make reasonable

---

[13]  Because this court allows summary judgment on the section
1983 false arrest claim on the merits, this court addresses the
qualified immunity argument as an alternative basis to allow
defendants summary judgment on monetary damages on this claim.

but mistaken judgments about open legal questions.'" Id.
(quoting Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011)).  The
doctrine does not protect public officials "who, 'from an
objective standpoint, should have known that their conduct was
unlawful.'" Drumgold v. Callahan, 707 F.3d 28, 42 (1st Cir.
2013) (quoting Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir.
2011)).

     The analysis is twofold. See Maldonado v. Fontanes, 568
F.3d 263, 268-69 (1st Cir. 2009).  Under this framework, a court
must decide "'(1) whether the facts alleged or shown by the
plaintiff make out a violation of a constitutional right; and
(2) if so, whether the right was "clearly established" at the
time of the defendant's alleged violation.'" Rocket Learning,
Inc. v. Rivera-Sanchez, 715 F.3d 1, 8 (1st Cir. 2013) (quoting
Maldonado v. Fontanes, 568 F.3d at 269).  These two steps "need
not be considered in any particular order, and both prongs must
be satisfied for a plaintiff to overcome a qualified immunity
defense." Raiche v. Pietroski, 623 F.3d at 35; accord Rocket
Learning, Inc. v. Rivera-Sanchez, 715 F.3d at 9 ("federal courts
have discretion to administer" the "test in the order that they
determine 'will best facilitate the fair and efficient
disposition of each case'") (quoting Pearson v. Callahan, 555
U.S. at 242).

The second prong entails ascertaining "(a) the clarity of the law in general at the time of the alleged violation; and (b) the clarity of the law as applied to the case-in other words, whether a reasonable person in the defendant's shoes 'would have understood that his conduct violated the Plaintiff's constitutional rights.'" Raiche v. Pietroski, 623 F.3d at 36; accord Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011). The latter aspect is "'undertaken in light of the specific context of the case, not as a broad general proposition.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d at 9; see also Estrada v. Rhode Island, 594 F.3d 56, 63 (1st Cir. 2010) (inquiry is "'highly fact specific'").

Summary judgment relative to qualified immunity presents an "inherent tension" because summary judgment "requires absolute deference to the nonmovant's" facts whereas qualified immunity "demands deference to the reasonable, if mistaken, actions of the movant." Morelli v. Webster, 552 F.3d at 18-19. Morelli instructs a court "to cabin these standards and keep them logically distinct, first identifying the version of events that best comports with the summary judgment standard and then asking whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." Id. at 19. In identifying that version of events, the summary judgment facts and reasonable inferences drawn therefrom are viewed in

plaintiff's favor.  See Campos v. Van Ness, 711 F.3d 243, 245 (1st Cir. 2013) ("when the parties tell two different stories, as is the case here, we typically must view the facts and draw all reasonable inferences in the non-movant's favor").  Plaintiff's factual assertions must nonetheless be "put forward on personal knowledge or otherwise documented by materials of evidentiary quality."  Morelli v. Webster, 552 F.3d at 19.  When the record blatantly contradicts plaintiff's version, "'a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'"  Campos v. Van Ness, 711 F.3d at 245 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

Because the summary judgment version of facts establish the existence of probable cause to arrest plaintiff for assault and battery on an elderly person, resisting arrest, assault and battery on a police officer and assault and battery with a dangerous weapon, Officers Pascuccio, Gately and Simonds are entitled to qualified immunity on the section 1983 false arrest claim under the first prong of the immunity analysis.  See, e.g., Grassia v. Piers, 2011 WL 2507714, at *4 (1st Cir. June 24, 2011) ("[b]ecause the finding of probable cause was justified, the arrest and prosecution based on that probable cause violated neither the Constitution nor state law, entitling the individual defendants to qualified immunity") (Fourth, Fifth and Fourteenth

Amendment claims);[14] see generally United States v. Lee, 317 F.3d 26, 33 n.2 (1st Cir. 2003) ("[w]hat counts is that probable cause existed, whether for the charge actually prosecuted or for some other offense that justified full custodial detention").

In determining whether the officers are entitled to qualified immunity for the section 1983 excessive force claim, this court must view the facts and draw all reasonable inferences in plaintiff's favor.  Under those facts, when Officers Pascuccio, Gately and Simonds knocked on the door of 605 Main Street, plaintiff asked "what was going on."  (Docket Entry # 50, ¶ 5) (Docket Entry # 58, ¶ 5).  Plaintiff testified that when he attempted to close the rear door, Officer Pascuccio reached out and his hand struck the glass window pane on the door, shattering it.  Plaintiff refused to leave the property.  He testified he wanted to put some distance between himself and the officers and subsequently backed away in a non-combative manner.  Officer Gately deployed capsicum while advancing towards plaintiff and Officer Pascuccio deployed capsicum thereafter.  While one of plaintiff's hands was pinned behind his back, his hand was cut on a piece of glass.  Plaintiff also stated he was struck in the left eye by a closed fist.  Plaintiff could not identify which officer struck him.  Drawing inferences in favor of plaintiff as

---

[14]  Federal Rule of Appellate Procedure 32.1 allows citations of unpublished opinions issued on or after January 1, 2007.  See also First Circuit Rule 32.1.0.

the non-moving party, the facts provide sufficient evidence for a finder of fact to conclude there was a violation of plaintiff's constitutional right to be free from excessive force.

Proceeding to the next prong of the analysis, the second step incorporates both "the clarity of the law at the time of the violation" and "whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Drumgold v. Callahan, 707 F.3d at 42 (citing Maldonado v. Fontanes, 568 F.3d at 269). The dispositive inquiry "'is whether it would be clear to a reasonable [official] that his conduct was unlawful *in the situation he confronted*.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d at 9 (quoting Maldonado v. Fontanes, 568 F.3d at 269) (emphasis added); see Gericke v. Begin, 2014 WL 2142519, at *4 (1st Cir. May 23, 2014) (task determines whether "'law at the time of the alleged violation gave the defendant *fair warning* that his particular conduct was unconstitutional'") (emphasis added). The relevant time frame is "the state of the law at the time of the alleged violation." Walden v. City of Providence, Rhode Island, 2010 WL 610066, *10 (1st Cir. Feb. 23, 2010).

Examining the clarity of the law at the time of the alleged violation, a 2008 First Circuit decision vacated the lower court's allowance of qualified immunity on summary judgment to agents of the Federal Bureau of Investigation who, without

provocation, hit a number of the plaintiffs and pepper sprayed
them.  Asociación de Periodistas de Puerto Rico v. Mueller, 529
F.3d 52, 61 (1st Cir. 2008).  The plaintiffs were not acting in a
threatening manner and were in a crowd of people leaving through
a gate from a condominium complex where the agents were executing
a search warrant.  Id.  The decision collects a series of cases
in which the use of pepper spray on peaceful protestors or
unarmed and non-threatening individuals was deemed excessive
force.  See id. at 60-61.  In Mueller, the individual plaintiffs
were, without provocation, "pepper sprayed in the face."  Id. at
59.  The Mueller court also found the lower court "erroneously
adopted the defendants' characterization of the day's events and
failed to assess the facts under the appropriate standard:
'whether plaintiff's [Fourth Amendment] claim survives in light
of all the uncontested facts *and any contested facts looked at in
the plaintiff's favor.*'"  Id. (quoting Riverdale Mills Corp. v.
Pimpare, 392 F.3d 55, 62 (1st Cir. 2004)) (emphasis added).  On
the other hand, a 2004 First Circuit case reflects the clearly
established law that use of pepper spray by a police officer
against a person armed with an axe is objectively reasonable.
Isom v. Town of Warren, Rhode Island, 360 F.3d 7, 12 (1st Cir.
2004).  In Isom, where the police encountered a "seemingly
suicidal man, who had briefly held two hostages and was refusing
to comply with continuous officer requests that he put down an

axe," the use of pepper spray did not constitute excessive force. Id. at 11.  Thus, the law that the use of force in the form of pepper spray is unreasonable against non-threatening parties under the circumstances at issue in Mueller but reasonable if used against parties who are armed under the circumstances presented in Isom, was clearly established at the time of the incident.

Turning to whether a reasonable police officer would have understood that his conduct violated plaintiff's constitutional rights, the law was clearly established that the use of pepper spray without any provocation on an unarmed, non-threatening individual constituted excessive force at the time of the June 2012 incident.  Viewing the facts in plaintiff's favor and discarding plaintiff's version when it blatantly contradicts the summary judgment record, plaintiff asked the officers "what was going on" when Officers Pascuccio, Gately and Simonds arrived at 605 Main Street.  (Docket Entry # 50, ¶ 5) (Docket Entry # 58, ¶ 5).  When plaintiff calmly closed the door, Officer Paccuccio reached across for the door and struck a glass pane injuring his hand.  Upon officer Gately's request thereafter, plaintiff opened the door.  Plaintiff observed the officers become "agitative" and assaultive and he therefore backed away further into the house. The officers then entered the house even though plaintiff demanded that they leave and had repeatedly asked if they had a

warrant.  Plaintiff did, however, "sw[ear] at them using
expletives."  (Docket Entry # 46-7, p. 17).  Plaintiff was not
advancing towards the officers in a threatening manner and he was
not armed in any way.  Officer Gately deployed capsicum while
advancing towards plaintiff and Officer Pascuccio deployed
capsicum thereafter.  Viewing the facts, there is a genuine issue
of material fact as to whether a reasonable officer would have
understood that his conduct violated plaintiff's clearly
established constitutional right to be free from excessive force.
Officers Pascuccio, Gately and Simonds are therefore not entitled
to qualified immunity at this point in time with respect to the
section 1983 Fourth Amendment excessive force claim.

D.   Municipal Liability

     Defendants argue that plaintiff cannot show that any of his
claimed constitutional violations occurred due to a custom or
policy adopted by the City of Woburn and, accordingly, the
Woburn Police Department is entitled to summary judgment.
(Docket Entry # 45, p. 14).  They also point out that municipal
liability requires the occurrence of "'a constitutional harm.'"
(Docket Entry # 45, p. 14).  They submit that plaintiff failed
to proffer any evidence to support municipal liability.  (Docket
Entry # 45, p. 14).

     With respect to the section 1983 false arrest claim, this
court found no constitutional violation.  Municipal liability

requires an underlying constitutional violation on the part of the primary actor.  See Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010) ("Monell can impose municipal liability only for underlying, identifiable constitutional violations attributable to official municipal policy").  Without an underlying constitutional violation, the municipality is not liable.  See, e.g., Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005) (because "Saraiva did not use excessive force against Cornel, any claim hinged on the City's failure to train or discipline Saraiva must fail").  Accordingly, summary judgment is warranted in favor of the Woburn Police Department based upon the section 1983 false arrest claim.

Turning to defendants' argument that there was no constitutional violation due to a municipal custom or policy, it is well established that municipal liability under section 1983 is neither vicarious nor based on respondeat superior.  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 663 n.7 (1978); Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 503 (1st Cir. 2012) (municipality cannot be sued under section 1983 "on a respondeat superior theory"); Estate of Bennett v. Wainwright, 548 F.3d 155, 177 (1st Cir. 2008) ("municipal liability is not vicarious").  Section 1983 only imposes liability on local governments "for 'their own illegal

acts.'" Connick v. Thompson, 563 U.S. 51, 60 (2011) (emphasis
in original) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479
(1986)).

In order to impose section 1983 liability on the City of
Woburn and, by extension, the Woburn Police Department,
plaintiff must "identify a municipal 'policy' or 'custom' that
caused the plaintiff's injury." Board of County Comm'rs of
Bryan County, Okla. v. Brown, 520 U.S. 397, 403 (1997); accord
Connick v. Thompson, 563 U.S. at 60 (plaintiffs "must prove that
'action pursuant to official municipal policy' caused their
injury"); City of Canton, Ohio v. Harris, 489 U.S. 378, 385-87
(1989) (plaintiff must establish a direct link between the
municipal policy and the constitutional violation). "Such
custom 'must be so well settled and widespread that the
policymaking officials of the municipality can be said to have
either actual or constructive knowledge of it yet did nothing to
end the practice.'" Estate of Bennett v. Wainwright, 548 F.3d
at 177 (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st
Cir. 1989)). A "policy" results "from the decisions of [the
municipality's] duly constituted legislative body or of those
officials whose acts may fairly be said to be those of the
municipality." Board of County Comm'rs of Bryan County, Okla.
v. Brown, 520 U.S. at 403-04 (citing Monell v. Dep't of Soc.
Servs. of City of New York, 436 U.S. at 694). An official

42

policy thus "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. at 51.

In addition to identifying a municipal policy or custom, the "policy or custom must have caused the deprivation of the plaintiff's constitutional rights and the municipality must have the requisite level of culpability:  deliberate indifference to the particular constitutional right of the plaintiff." Crete v. City of Lowell, 418 F.3d 54, 66 (1st Cir. 2005); see Young v. City of Providence ex rel. Napolitano, 404 F.3d at 26 (plaintiff must show that the city is responsible for the violation, a level of fault that "is generally labeled" as one of "'deliberate indifference'"); see also Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. at 404 ("plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct casual link").  Thus, "A municipality can be liable under § 1983 for failing to [train, supervise and discipline] . . . if that failure causes a constitutional violation . . . 'of persons with whom the [officers] come into contact.'" DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005) (quoting City of Canton, Ohio v. Harris, 489 U.S. at 388).

Here, plaintiff's memorandum in support of his motion for summary judgment on the section 1983 false arrest and excessive force claims contain no factual allegations, let alone citations to facts of suitable evidentiary quality, that the Woburn Police Department adopted any policy, custom or practice upon which municipal liability can be based under section 1983.  Indeed, there is a dearth of evidence in the summary judgment record that the supposed unlawful action of excessive force or arresting plaintiff without probable cause was taken pursuant to a policy, practice, custom, regulation or enactment.  Therefore, plaintiff's claim of municipal liability against the Woburn Police Department is subject to summary judgment.  See, e.g., Thompson v. Burach, 2013 WL 1174051, at *1 (9th Cir. March 22, 2013) (dismissing claims against police department as no facts demonstrated actions were the result of official policy or custom); Tsetse v. Oakland Police Dep't, 2015 WL 5785545, at *2 (N.D.Cal. Oct. 5, 2015) (dismissing section 1983 claim against police department for failure to allege grounds for municipal liability based on any theory other than respondeat superior).

II.  Plaintiff's Summary Judgment Motion

As previously stated, plaintiff moves for summary judgment on various state law claims that are not plead in the complaint or otherwise a part of this action.  The only claims which are part of this action and upon which plaintiff seeks summary

judgment consist of the section 1983 and section 1985 claims.
(Docket Entry ## 52, 53).  In addition to filing their own
motion for summary judgment, defendants filed an opposition to
plaintiff's motion for summary judgment that presents a number
of arguments and also adopts the arguments defendants make to
support their summary judgment motion.  (Docket Entry ## 45,
55).

A.  Section 1983 Excessive Force Claim

    Although plaintiff seeks summary judgment on the section
1983 false arrest claim, viewing the record in defendants'
favor, he is not entitled to summary judgment.  Indeed, this
court has already allowed summary judgment for defendants,
finding probable cause for the arrest when construing the record
in plaintiff's favor.

    In regard to his motion for summary judgment of the section
1983 excessive force claim, plaintiff argues "[t]here was no
disturbance, no threat of bodily harm, no emergency and danger
present at the home up and until officers intentionally broke
and entered into the home and assaulted Plaintiff in a wanton,
reckless, negligent and malicious manner."  (Docket Entry # 53,
p. 10).  As support for this argument, plaintiff cites the
judgments found in his favor as to the charges of assault and
battery on a person 60 years of age or older which caused bodily
injury, assault and battery with a dangerous weapon, assault and

battery on a police officer and resisting arrest.  (Docket Entry ## 53, 53-6).

Defendants argue that, under the circumstances, "a reasonable police officer could consider the plaintiff to be dangerous, justifying the use of pepper spray, even if it was not, in fact, necessary."  (Docket Entry # 45, p. 10).  Defendants further argue if an officer mistakenly but reasonably believes a suspect may fight back, the use of more force than necessary is justified.  (Docket Entry # 45, p. 10).  Defendants submit that although plaintiff suffered a minor cut on his hand and above his eye, it was in the midst of an arrest and plaintiff did not see how the injury occurred and cannot identify which officer inflicted the injuries.  (Docket Entry # 45, p. 11).  Finally, defendants point out that plaintiff's injuries were minor and insufficient to support an inference of excessive force.  (Docket Entry # 45, p. 11).

Here, plaintiff's hand was cut on a piece of glass while one of his hands was being pinned behind his back.  Plaintiff also stated he was struck in the left eye by a closed fist, although he could not identify which officer struck him.  Officer Simonds testified that Officers Pascuccio and Gately deployed pepper spray.  Prior to arriving at 605 Main Street, John Devine, Sr. told police his son, plaintiff, had struck him.  Officers Pascuccio, Simonds and Gately asked plaintiff four to

five times to exit the property and plaintiff refused.  Officer
Pascuccio stated plaintiff "slammed the door" causing Officer
Pascuccio's hand to go through the glass pane window on the
door.  (Docket Entry # 46-12, pp. 8-11).  Upon entering the
home, plaintiff demanded Officers Pascuccio, Simonds and Gately
get out of the house and used expletives.  Although Officer
Pascuccio told plaintiff he was being placed under arrest,
plaintiff spoke over the officer, interrupted him and ordered
him out of the house.  While being placed under arrest,
plaintiff struck Officers Gately and Simonds.  Viewing the
record in defendants' favor, there are genuinely disputed
material facts as to whether the use of force was excessive or
reasonable under the circumstances.  Because a finder of fact
could conclude that the force employed by Officers Pascuccio,
Simonds and Gately was reasonable under the circumstances,
plaintiff's motion for summary judgment on the section 1983
excessive force claim is denied.

B.   Section 1985 Conspiracy Claim

     Plaintiff also moves for summary judgment on the section
1985 conspiracy claim.  (Docket Entry ## 52, 53).  Plaintiff
argues defendants knowingly conspired to file false charges
against plaintiff and attempted to intimidate him into accepting
a plea by holding him "against his will for well over a year."
(Docket Entry # 53, p. 11).  Plaintiff asserts that each month

the assistant district attorney "pressured Plaintiff to accept a plea bargain." (Docket Entry # 53, p. 11). Plaintiff also alleges that defendants "conspired to influence the verdict, conspired to defeat the due course of justice with intent to deny Plaintiff's equal protection under the law and injured Plaintiff with disregard for equal protection under the law." (Docket Entry # 53, p. 11).

In their opposition to plaintiff's motion for summary judgment, defendants first argue plaintiff fails to allege a civil rights violation. (Docket Entry # 55, p. 5). Next, defendants correctly maintain that plaintiff does not provide any evidence to support his claim of conspiracy and refers only to plea agreements that were initiated by the assistant district attorney. (Docket Entry # 55, p. 5).

"Section 1985(3) creates a private right of action 'for injuries occasioned when "two or more persons . . . conspire . . . for the purposes of depriving, either directly or indirectly any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law."'" Diva's Inc. v. City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005) (internal citations omitted). A claim under section 1985(3) has four elements:  "(1) a conspiracy, (2) a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy, and, lastly,

(4) . . . injury to person or property or . . . a deprivation of a constitutionally protected right." Soto-Padró v. Public Bldgs. Auth., 675 F.3d 1, 4 (1st Cir. 2012) (internal quotation marks and citation omitted).  A "conspiratorial purpose" requires a racial or class-based animus behind the conspirators' actions.  See Pérez-Sánchez v. Public Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).

Here, the record shows plaintiff was nolle prossed on one charge and found not guilty on the other charges brought against him.  As this court previously found, however, the summary judgment record establishes as a matter of law that there was probable cause for the arrest.  Therefore, plaintiff is unable to show defendants knowingly conspired to "falsify charges against Plaintiff." (Docket Entry # 53, p. 11).  Although plaintiff argues defendants knowingly attempted to intimidate plaintiff into accepting a plea bargain by holding him against his will for over a year, the record shows plaintiff was found not competent in two separate examinations ordered by the Woburn District Court and was held until he was deemed competent for trial.  Plaintiff further alleges the Middlesex Assistant District Attorney pressured plaintiff to accept a plea bargain but does not provide any citation to the record to support this assertion.  The allegations in plaintiff's brief are not facts of evidentiary quality and plaintiff did not file a LR. 56.1

statement of undisputed facts with citations to facts of suitable evidentiary quality.  Given plaintiff's conclusory allegations without support to the record, plaintiff's motion for summary judgment on the section 1985 claim is denied.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, defendants' motion for summary judgment (Docket Entry # 44) is **ALLOWED** with respect to the section 1983 false arrest claim and municipal liability against the Woburn Police Department and otherwise **DENIED**.  Plaintiff's summary judgment motion (Docket Entry # 52) is **DENIED** and John Devine, Sr.'s summary judgment motion (Docket Entry # 48) is **DENIED** as moot because there is no civil conspiracy claim pled against him in the third-party complaint or a *state* law civil conspiracy claim in the complaint upon which to base a contribution or indemnity claim.  The state law claims which remain in this action consist of the claims that the individual officers violated the Massachusetts constitution based on an illegal arrest without probable cause and the use of excessive force.  The parties shall appear at a status conference to set a trial date on October 13, 2016 at 2:30 p.m.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge